JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**The Henderson Corporation**
**575 State Highway, Raritan, NJ 08869**

**(b)** County of Residence of First Listed Plaintiff **Somerset County NJ**
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
**Cohen, Seglias, Pallas, Greenhall & Furman, P.C.**
**30 S. 17th St. Phila PA 19103 (215) 564-1700**

## DEFENDANTS

**Moravian Associates, et al**

County of Residence of First Listed Defendant   **Philadelphia County**
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government
Plaintiff

☐ 2 U.S. Government
Defendant

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 4 Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability / ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander / ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product **PERSONAL PROPERTY** | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability / ☐ 370 Other Fraud | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 380 Other Personal | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / ☐ 385 Property Damage | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury Product Liability | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations / ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare / ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination |
| ☒ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | Under Equal Access |
| | Employment / ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | to Justice |
| | ☐ 446 Amer. w/Disabilities - / ☐ 555 Prison Condition | Alien Detainee | | ☐ 950 Constitutionality of |
| | Other | ☐ 465 Other Immigration | | State Statutes |
| | ☐ 440 Other Civil Rights | Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original
Proceeding

☐ 2 Removed from
State Court

☐ 3 Remanded from
Appellate Court

☐ 4 Reinstated or
Reopened

☐ 5 Transferred from
another district
(specify)

☐ 6 Multidistrict
Litigation

☐ 7 Appeal to District
Judge from
Magistrate
Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
**28 USC Sec. 1332**
Brief description of cause:
**Breach of Settlement Agreement, Fraudulent Transfer and Quiet Title**

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE   **J. Curtis Joyner**

DOCKET NUMBER   **05-1726, 06-2165**

DATE   **8/29/08**

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

| Print | Save As... | Export as FDF | Retrieve FDF File | Reset |
|---|---|---|---|---|

APPENDIX I

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| The Henderson Corporation | : | CIVIL ACTION |
| v. | : | |
| Morvavain Associates, Inc. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. §2241 through §2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) (✗)

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( )

| 8/29/08 | George Pallas/Marian Kornilowicz | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |

| 215-564-1700 | 215-564-3066 | gpallas@cohenseglias.com mkornilowicz @ |
|---|---|---|
| **Telephone** | **FAX Number** | **E-Mail Address**  cohenseglias.com |

(Civ. 660) 10/02

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **575 State Highway, Raritan, NJ 08869**

Address of Defendant: **1926 Arch Street, 4th Floor, Philadelphia, PA 19103**

Place of Accident, Incident or Transaction: **121-135 Walnut Street, Philadelphia, PA**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))    Yes☐    No☒

Does this case involve multidistrict litigation possibilities?    Yes☐    No☒
*RELATED CASE, IF ANY:*

Case Number: **05-1726;06-2165**    Judge **J. Curtis Joyner**    Date Terminated: **12/30/05; pending**

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☒    No☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes☒    No☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?    Yes☐    No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐    No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases

(Please specify) **Breach of Settlement Agreemen**

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, **Marian A. Kornilowicz**                , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 8/29/08                                    43776
                    Attorney-at-Law                    Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    _____    _____
                    Attorney-at-Law                    Attorney I.D.#

CIV. 609 (6/08)

## UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: **575 State Highway, Raritan, NJ 08869**

Address of Defendant: **1926 Arch Street, 4th Floor, Philadelphia, PA 19103**

Place of Accident, Incident or Transaction: **121-135 Walnut Street, Philadelphia, PA**
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes ☐   No ☒

Does this case involve multidistrict litigation possibilities?   Yes ☐   No ☒
*RELATED CASE, IF ANY:*

Case Number: **05-1726;06-2165**   Judge **J. Curtis Joyner**   Date Terminated: **12/30/05; pending**

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes ☒   No ☐

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes ☒   No ☐

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?
   Yes ☐   No ☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes ☐   No ☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☒ All other Diversity Cases

(Please specify) **Breach of Settlement Agreemen**

## ARBITRATION CERTIFICATION
*(Check appropriate Category)*

I, **Marian A. Kornilowicz**, counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE: 8/29/08   _____   43776
                  Attorney-at-Law          Attorney I.D.#
      **NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____   _____   _____
                        Attorney-at-Law          Attorney I.D.#

CIV. 609 (6/08)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **THE HENDERSON CORPORATION** | : | |
| **575 State Highway** | : | |
| **Raritan, NJ 08869** | : | |
| | : | |
| **Plaintiff,** | : | **CIVIL ACTION NO.** _____ |
| | : | |
| **v.** | : | |
| | : | |
| **MORAVIAN ASSOCIATES, L.P.** | : | |
| **1926 Arch Street, 4th Floor** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **and** | : | |
| | : | |
| **MORAVIAN ASSOCIATES, LLC** | : | |
| **1926 Arch Street, 4th Floor** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **and** | : | |
| | : | |
| **121 WALNUT STREET APARTMENT** | : | |
| **ASSOCIATES, L.P.** | : | |
| **1926 Arch Street, 4th Floor** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **and** | : | |
| | : | |
| **121 WALNUT STREET RESTAURANT** | : | |
| **ASSOCIATES, L.P.** | : | |
| **1926 Arch Street, 4th Floor** | : | |
| **Philadelphia, PA 19103** | : | |
| | : | |
| **and** | : | |
| | : | |
| **LEROY E. KEAN** | : | |
| **1821 Sansom Street, Ste. 200** | : | |
| **Philadelphia, PA 19103-4904** | : | |
| | : | |
| **and** | : | |
| | : | |
| **JONATHAN SUTTON** | : | |
| **1926 Arch Street, 4th Floor** | : | |
| **Philadelphia, PA 19103** | : | |

                                    :

**and**                       :

**STANLEY F. TARAILA**       :
**6953 Greenhill Road**       :
**Philadelphia, PA 19151**    :

**and**                       :

**BERNARD D. COOGAN**      :
**1735 Justin Lane**          :
**Paoli, PA 19103**            :

**and**                       :

**WALNUT STREET INVESTMENT**  :
**ASSOCIATES, LLC**          :
**1821 Sansom Street, Ste. 200**   :
**Philadelphia, PA 19103-4904**  :

**and**                       :

**SOVEREIGN BANK**         :
**1130 Berkshire Blvd.**      :
**Wyomissing, PA 19610**     :

**and**                       :

**RENAISSANCE DEVELOPMENT REAL** :
**ESTATE SERVICES, LLC**     :
**1926 Arch Street, 4th Floor**   :
**Philadelphia, PA 19103**    :

                   **Defendants.**   :

----

## COMPLAINT

The Henderson Corporation ("Henderson"), by and through its undersigned counsel, Cohen, Seglias, Pallas, Greenhall & Furman, P.C., hereby files this Complaint seeking enforcement of a settlement agreement, damages for fraud, and declaratory relief against Defendants Moravian Associates, L.P., ("Moravian LP"), Moravian Associates, LLC ("Moravian LLC"), 121 Walnut

Street Apartment Associates, L.P. ("Apartment Associates"), and 121 Walnut Street Restaurant Associates, L.P. ("Restaurant Associates") (collectively referred to as "Moravian Defendants"); Leroy E. Kean ("Kean"), Jonathan Sutton ("Sutton"), Bernard D. Coogan ("Coogan"), and Stanley F. Taraila ("Taraila") (collectively referred to as "Principal Parties"); Walnut Street Investment Associates, LLC ("WSIA"), Sovereign Bank ("Sovereign"), and Renaissance Development Real Estate Services, LLC ("Renaissance"), for their failure and/or refusal (i) to allow the delivery to Henderson of proceeds from the sale of two condominium units and (ii) to release the Citizens Mortgage (defined below) on property of Moravian LP located in Philadelphia, Pennsylvania. The debt secured by the Citizens Mortgage was paid off in full on April 30, 2007, but the Citizens Mortgage was not satisfied but assigned to WSIA. Henderson seeks, *inter alia*, to have the sale proceeds released to it and the Citizens Mortgage presently assigned to WSIA stricken, and avers as follows:

## I.     JURISDICTION AND VENUE

1.     This Court maintains diversity jurisdiction over this case pursuant to 28 U.S.C. §1332 *et seq.* because it involves a controversy between citizens from different states in excess of $75,000.00.

2.     Henderson seeks relief pursuant to, *inter alia*, the Declaratory Judgment Act, 28 U.S.C.A. §§2201-2202.

3.     Venue is properly laid in this district under 28 U.S.C. § 1391 *et seq.* because all of the Defendants reside or conduct business in this judicial district, the Property is located within this judicial district, and all of the facts set forth in this Complaint arise from actions and omissions occurring in this judicial district.

3

## II.    PARTIES

4.    Plaintiff Henderson is a New Jersey corporation with a principal place of business located at 575 State Highway, Raritan, New Jersey 08869.

5.    Defendant Moravian LP is a Pennsylvania limited partnership with a principal place of business located at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103. Moravian is the owner of the Property defined below and the declarant of the Condominium defined below.

6.    Defendant Moravian LLC is a Pennsylvania limited liability company with a principal place of business located at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103. Moravian LLC is the general partner of Moravian LP, Restaurant Associates and Apartment Associates.

7.    Defendant Apartment Associates is a Pennsylvania limited partnership with a principal place of business located at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103. It is the owner of the Apartments as defined below.

8.    Defendant Restaurant Associates is a Pennsylvania limited partnership with a principal place of business located at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103. It is the owner of the Restaurant Unit as defined below.

9.    Defendant Leroy E. Kean is an adult individual and maintains an address at 1821 Sansom Street, Suite 200, Philadelphia, PA 19103. Defendant Kean is a principal of Moravian Defendants and WSIA.

10.    Defendant Jonathan Sutton is an adult individual and maintains an address at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103. Defendant Sutton is a principal of the Moravian Defendants and Renaissance.

11.     Defendant Stanley F. Taraila is an adult individual and maintains an address at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103.  Defendant Taraila is a principal of the Moravian Defendants and Renaissance.

12.     Defendant Bernard D. Coogan is an adult individual and maintains an address at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103.  Defendant Coogan is a principal of Moravian Defendants and Renaissance.

13.     At all times material hereto, the Principal Parties acted as agents for and on behalf of the Moravian Defendants.

14.     The Moravian Defendants and the Principal Parties maybe collectively referred to as "Developer Defendants."

15.     At all times material hereto, Kean acted as agent for and on behalf of WSIA.

16.     At all times material hereto, Sutton, Coogan, and Taraila acted as agents for and on behalf of Renaissance.

17.     Defendant WSIA is a Delaware limited liability company with a principal place of located at 1821 Sansom Street, Suite 200, Philadelphia, PA 19103.

18.     Defendant Sovereign is a banking institution with a place of business located at 1130 Berkshire Blvd., Wyomissing, PA 19610. Sovereign is a party solely because of the security interest it holds in the Citizen Loan Documents as defined below.

19.     Defendant Renaissance is a Pennsylvania limited liability company with a principal place of business located at 1926 Arch Street, 4th Floor, Philadelphia, Pennsylvania 19103. Renaissance is the managing member of Moravian LLC.

## III.    FACTUAL BACKGROUND

20.    This action arises from the refusal of Developer Defendants and WSIA to allow proceeds from the sale of two condominium units at the Property to be released to Henderson in accordance with a Settlement Agreement dated May 1, 2005. Specifically, on April 30, 2007, defendant Kean, a principal of the Moravian Defendants, through his affiliate, WSIA, paid off a loan from Citizens Bank, which was secured by a mortgage on the Property. The underlying Citizens Loan Documents were assigned to WSIA; the payoff at that time was $864,835.47. On or about October 25, 2007, the amount paid by WSIA to Citizens Bank, plus interest, was remitted in full to WSIA from the closing of the purchase and sale of a condominium unit. Nonetheless, WSIA refuses to satisfy the Citizens Mortgage or allow the proceeds from subsequent sales of units to be distributed to Henderson and is demanding in excess of $1.5 Million to release the Citizens Mortgage.

### The Project

21.    In 2003, Developer Defendants began a project (the "Project") to redevelop and renovate the historic Old Original Bookbinder's Restaurant ("Bookbinder's"), convert certain space above Bookbinder's into apartments, and construct new condominiums units on the remaining area of the real property located at 145-147 South 2nd Street, and 121-135 Walnut Streets, Philadelphia, Pennsylvania (the "Property").

22.    Moravian LP took title to the Property on May 22, 2003 and created a master condominium on May 28, 2003 consisting of two units: a unit containing Bookbinder's (the "Restaurant Unit") and a residential condominium or sub-condominium (the "Condominium") consisting of nineteen newly constructed residential condominium units (the "Condominium Units")

6

and eight apartments (the "Apartments") located above the Restaurant Unit. The Condominium, known as The Moravian at Independence Square, was formed on September 9, 2004.

### Financing for the Project

23.     On May 22, 2003, Citizens Bank ("Citizens" or "Bank") loaned and agreed to advance to the Moravian Defendants the total amount of $8,875,000.00, divided into two separate loans: one in the amount of $6,756,031.00 for the construction of the Condominium Units and the second in the amount of $2,118,969.00 for the restoration/construction of the Restaurant Unit and Apartments (collectively, the "Citizens Loan").

24.     The Citizens Loan was secured by, *inter alia*, a mortgage on the Property (the "Citizens Mortgage"). (A true and correct copy of the Citizens Mortgage is attached as Exhibit "A.")

25      The loan documents for the Citizens Loan included two promissory notes, a Construction Loan Agreement, Security Agreement, the Citizen Mortgage, and other documents (collectively, the "Citizens Loan Documents").

26.     The maturity date for the two notes evidencing the Citizens Loan was December 1, 2004, but was extended through six amendments to April 30, 2007.

27.     A portion of the financing for the Project involved rehabilitation tax credits under Section 47 of the Internal Revenue Code for work performed on the Restaurant Unit and Apartments, which are now subject to the five-year holding period required to obtain the credits.

28.     The Citizens Loan was personally guaranteed by the Principal Parties including defendant Kean.

29.     On May 22, 2003, Restaurant Associates and Apartment Associates executed in favor of Renaissance a Development Fee Mortgage Note in the amount of $1,101,061.00 (the "Renaissance Note I"). The Renaissance Note I allegedly evidenced a loan from Renaissance to Restaurant

7

Associates and Apartment Associates "for the purpose of financing a portion of the Developers Advance to be paid" to Renaissance.

30.     The Renaissance Note I was secured by mortgages on the Restaurant and Apartments (collectively, the "Renaissance Restaurant and Apartment Mortgages"). (True and correct copies of the Renaissance Restaurant and Apartment Mortgages are attached as Exhibit "B.")

31.     On May 22, 2003, Moravian LP executed in favor of Renaissance a Developer Advance Mortgage Note in the amount of $89,750.00 (the "Renaissance Note II"). The Renaissance Note II allegedly evidenced a loan from Moravian LP "for the purpose of financing a portion of the Developers Advance to be paid" to Renaissance.

32.     The Renaissance Note II was secured by a mortgage on the Condominium Units (the "Renaissance Condominium Units Mortgage"). (A true and correct copy of the Renaissance Condominium Units Mortgage is attached as Exhibit "C.")

33.     Henderson believes and avers that Renaissance Note I and Renaissance Note II (collectively, the "Renaissance Notes") did not evidence funds actually lent or advanced to the Moravian Defendants by Renaissance but rather anticipated profit, or a return on investment, or a return of capital to Renaissance and the Principals.

### The Construction Agreements

34.     On April 24, 2003, Henderson signed two Owner/Construction Manager Agreements with the Moravian Defendants (the "Construction Agreements"), one contract for the construction of the Condominium Units and one for the restoration/construction of the Restaurant Unit and Apartments.

35.     In each Construction Agreement, the Moravian Defendants represented that they were "financially able to complete the construction of the Project and to fully perform the Construction

8

Contract including, without limitation, its payment obligations, either with its own funds or with the financing provided by the Bank."

### The Interim Agreement

36.     By June 2004, the Moravian Defendants fell behind in payments to Henderson under the Construction Agreements and, by September 2004, they had not paid Henderson for payment applications previously submitted in July and August. In December 2004, Henderson gave notice of its intent to cease work and it requested financial assurances from the Moravian Defendants.

37.     To induce Henderson to continue working on the Project (particularly, to complete the Restaurant Unit), Henderson and the Developer Defendants negotiated and executed an Interim Agreement between Owner and Construction Manager on January 27, 2005 (the "Interim Agreement"). This Interim Agreement provided assurances of payment to Henderson.

38.     On February 25, 2005, four days after Henderson completed the Restaurant Unit, the Developer Defendants notified Henderson that they were unable to make further payments to Henderson as contemplated in the Interim Agreement.

### The First Federal Action

39.     As a result of the Moravian Defendants' breach of the Construction Agreements and the Interim Agreement, Henderson ceased all work on the Project and, on April 13, 2005, it filed suit in the District Court for the Eastern District of Pennsylvania, docketed at Civil Action No. 05-1726 (the "First Federal Action"). This action was assigned to the Honorable J. Curtis Joyner.

40.     In the First Federal Action, Henderson sought damages for Moravian Defendants' failure to pay for over $3.7 Million in work and materials due under the Construction Agreements.

9

**The Settlement Agreement**

41.    Immediately after the First Federal Action was filed, Henderson and Moravian Defendants engaged in settlement discussions and, on September 19, 2005, after approximately five months of intense negotiation and drafting, Henderson and the Moravian Defendants executed the Settlement Agreement. The Settlement Agreement had an effective date of May 1, 2005, the date on which the parties settled the First Federal Action. (A true and correct copy of the Settlement Agreement, without exhibits, is attached as Exhibit "D.")

42.    In the Settlement Agreement, the Moravian Defendants agreed that Henderson was owed the sum of $3.358 Million plus interest accruing from May 1, 2005, at a variable rate equal to the Wall Street Journal Prime Rate plus one (1%) percent. The full amount of the indebtedness owed to Henderson, plus the accrued interest, was to be paid within three (3) years from the date of the Settlement Agreement, *i.e.,* by May 1, 2008.

43.    Because the Moravian Defendants lacked the funds necessary to pay Henderson, the parties agreed that Henderson would receive proceeds from the sales of the Condominium Units; provided, however, that Henderson's right to the proceeds would be subordinate to certain claims.

44.    Pursuant to the Settlement Agreement, the Moravian Defendants executed and delivered to Henderson a note (the "Henderson Note") and a mortgage on the remaining Condominium Units in the amount of $3.358 million (the "Henderson Mortgage"). The Henderson Note provided for a default rate of interest of five percentage points (5%) above the interest rate in effect. (True and correct copies of the Henderson Note and Henderson Mortgage are attached as Exhibits "E" and "F.")

45.    Pursuant to §3.a of the Settlement Agreement, the Moravian Defendants agreed that the Henderson Mortgage on the remaining Condominium Units was to be junior only to the Citizens

10

Mortgage securing the Bank's debt, which the parties agreed was $3,996,000.00 as of July 26, 2005. As a result, Renaissance subordinated the Renaissance Condominium Units Mortgage to the Henderson Mortgage.

46.     To allow for the completion of the interiors of the unfinished Condominium Units, the Moravian Defendants secured "revolver" financing from Defendant WSIA, which is an affiliate of Defendant Kean, a principal of the Moravian Defendants and a guarantor of the Citizens Loan.

47.     Henderson and the Moravian Defendants agreed that while Citizens Bank would retain a first priority lien on the Condominium Units, as the units were sold, the proceeds would be distributed as follows:

        a.     payment of customary closing costs and expenses chargeable to the owner;

        b.     payment to WSIA for the costs of completing the interior of the unit(s) being sold, not to exceed $425,000.00 for any one unit, and up to a maximum aggregate amount of $800,000.00, for all units;

        c.     payment to Citizens Bank in accordance with the terms of the Citizen Loan Documents; and

        d.     after payment of the full amount owed to Citizens Bank and satisfaction of the Citizens Mortgage, the remaining proceeds would be paid to Henderson, until the $3,358,000.00 indebtedness was repaid in full.

48.     Among Henderson's rights and remedies under in the Settlement Agreement was the right under §3.b. to require the Moravian Defendants to post additional collateral in the event that value of Henderson's collateral (the net value of the remaining Condominium Units) fell below 120% of debt owed Henderson.

11

49.     The Settlement Agreement further expressly denied the Moravian Defendants the right to place, or to permit to exist, any debt, lien or other security interest on the Condominium Units other than those expressly identified in a title report issued at that time. Specifically, §3.c. of the Settlement Agreement states:

> [Moravian] shall not create, incur, assume or permit to exist any security interest, lien, mortgage or encumbrance on the Property, except those listed on title reports dated June 13, 2005 and July 26, 2005 and the mortgage granted to [Henderson].

50.     On December 30, 2005, after the Henderson Mortgage was recorded, Henderson dismissed the First Federal Action with prejudice.

51.     In accordance with the terms of the Settlement Agreement, from the first sale of a Condominium Unit on November 7, 2005, Henderson cooperated with the Moravian Defendants and Citizens Bank, and released its lien on the Condominium Units as they were sold. The sales proceeds were disbursed to Citizens Bank and WSIA.

52.     Between November 7, 2005 and October 25, 2007, $3,996,000.00 (the principal owed as of July 26, 2005), plus interest and costs, was distributed to Citizens Bank, and $704,824.61 was distributed to WSIA.

### The Second Federal Action

53.     On or about May 15, 2006, the Moravian Defendants filed a Complaint in the Court of Common Pleas of Philadelphia County, requesting emergency equitable relief in the form of an action to quiet title and seeking to declare the Settlement Agreement null and void and to strike the Henderson Mortgage.

54. Henderson removed the action to the United States District Court for the Eastern District of Pennsylvania, which was docketed at Civil Action No. 06-2165 and again assigned to Judge Joyner (the "Second Federal Action").

55. Trial in the Second Federal Action took place on February 11, 12, and 13, 2008 and, on August 18, 2008, the Court entered Judgment in favor of Henderson. (A copy of the Court's Decision and Order is attached hereto and incorporated herein Exhibit "G.")

56. In its Decision, the Court denied Moravian Defendants' request to declare the Settlement Agreement a nullity and to strike the Henderson Mortgage. It specifically concluded that Henderson's right or interest in the proceeds from the sale of Condominium Units vests when WSIA is reimbursed an aggregate total of $800,000.00 for costs incurred in completing the Units and that the value of the indebtedness to Henderson, including interest, was $4,355,207.00 as of May 1, 2008.

### Henderson's Confessed Judgment

57. By the spring of 2006, the value of Henderson's collateral (the net value of the remaining Condominium Units) was below the total of indebtedness owed to Henderson under the Settlement Agreement.

58. By letter dated May 4, 2006, Henderson requested that the Moravian Defendants post additional collateral to raise the value to 120% of Henderson's debt as required by the Settlement Agreement. Moravian was unwilling or unable to post additional collateral.

59. By the spring of 2007, there was a collateral shortfall of over $1.5 million and, on March 26, 2007, Henderson confessed judgment on the Henderson Note in the amount of $3,525,900.00 plus interest from May 1, 2005 (the "Henderson Confessed Judgment"). The action was docketed in the Court of Common Please of Philadelphia County, at March Term 2007, No. 003337.

13

60.     The Henderson Confessed Judgment resulted in a judgment lien on the remaining Condominium Units, the Restaurant Unit, and the Apartments.

61.     On April 26, 2007, the Moravian Defendants filed a petition to open or strike the Henderson Confessed Judgment. By order dated July 19, 2007, the Honorable Mark Bernstein denied their petition.

62.     The Moravian Defendants appealed to the Superior Court the order denying their petition to open or strike the Henderson Confessed Judgment. This appeal was docketed at No. 1950 EDA 2007. On July 23, 2008, the Superior Court affirmed Judge Bernstein's decision denying the petition.

## Payoff of Citizens Bank

63.     Pursuant to the terms of the Settlement Agreement, the Henderson Mortgage was to be junior only to the Citizens Mortgage.

64.     Specifically, the Settlement Agreement provided Henderson collateral in the form of a secured position subordinate only to the $3,996,000.00 in principal owed to Citizens Bank at that time. Distributions of sale proceeds to Henderson were subordinate only to payments to Citizens and to WSIA in the aggregate maximum amount of $800,000.00.

65.     Between November 2005 and April 2007, Citizens Bank received all or substantially all of the proceeds from the sale of four condominium units and WSIA received the total of $704,824.61. Henderson did not receive any amounts.

66.     On or about April 30, 2007, the amended maturity date of the Citizens Loan, Citizens Bank issued a final payoff statement of principal and interest for the Citizens Loan in the amount of $864,835.47. (A true and correct copy of the Payoff Statement is attached as Exhibit "H.")

14

67.     On April 30, 2007, WSIA, the Moravian Defendants' revolver lender and an affiliate of Kean, a principal of the Moravian Defendants and a guarantor of the Citizens Loan, remitted the payoff amount of $864,835.47 in full, plus attorney's fees in the amount $11,174.34, to Citizens Bank.

68.     Rather than satisfying the Citizens Note and Citizens Mortgage, Citizens Bank assigned to WSIA the Citizens Loan Documents, including, *inter alia,* the Citizens Mortgage held against the remaining Condominium Units. (True and correct copies of the assignments of the Citizens Loan Documents and Citizens Mortgage are attached hereto and incorporated herein Exhibit "I.")

69.     In order to, *inter alia*, finance the payoff of the Citizens Loan, WSIA obtained a loan from Defendant Sovereign in the total amount of $1,650,000.00. As collateral security for this loan, WSIA assigned to Sovereign the Citizens Loan Documents including the Citizens Mortgage. (A true and correct copy of the collateral assignment of the Citizens Loan Documents is attached hereto and incorporated herein Exhibit "J.")

70.     On October 25, 2007, the total amount of $911,841.21 was remitted to WSIA from the closing of the purchase and sale of Unit 203.  This represented the amount of $864,835.47 in principal and interest and $11,174.34 in attorney's fees paid by WSIA to Citizens Bank on April 30, 2007, plus interest of $35,831.40 from April 30, 2007 to October 25, 2007.

71.     After the remittance to WSIA of $911,841.21 and the payment of customary closing costs, the amount of $34,430.12 remained for distribution from the sale proceeds of Unit 203.

72.     WSIA did not present any documentation of completion costs for Unit 203 although the amount of $95,185.39 remains available under the maximum aggregate cap of $800,000.00 established by the Settlement Agreement. Instead, the Moravian Defendants and WSIA demanded

15

that the entire proceeds be remitted to WSIA and refused to release any funds to Henderson. In order to allow the purchase and sale of Unit 203 to close, Henderson released its mortgage and judgment liens but required that the net proceeds of $34,430.12 be placed in escrow.

73.     On May 2, 2008, closing on the purchase and sale of Unit 604 took place. WSIA again did not present any documentation of unit completion costs and the Moravian Defendants and WSIA again demanded that the entire proceeds be remitted to WSIA. They refused to release any funds to Henderson.

74.     In order to allow the purchase and sale of Unit 604 to close, Henderson again released its mortgage and judgment liens but required that the net proceeds be placed in escrow. The amount of $890,829.25 was placed in escrow, for a total of $925,259.37 currently being held in escrow. These funds should have been released to Henderson.

75.     Although WSIA was reimbursed in full for its payment to Citizens Bank of the payoff amount on April 30, 2007, it now demands an amount in excess of $1.5 Million to release the Citizens Mortgage. Developer Defendants contend that no funds will be distributed to Henderson unless and until WSIA receives this amount.

76.     Upon information and belief, the amount demanded by WSIA represents the amount invested by Kean in the Project, both as a principal and guarantor, and is a return to Kean of his investment in a failed project.

77.     Two Condominium Units remain after the sale of Units 203 and 604. The eight Apartments will not be placed for sale by the Moravian Defendants until May 2010 when the historical tax credits expire.

16

78.     Henderson believes and avers that WSIA and Renaissance will not release their mortgages and allow any proceeds from the future sale of the two Condominium Units and eight Apartments to be distributed to Henderson.

## COUNT I
## BREACH OF SETTLEMENT AGREEMENT
### *Henderson v. Moravian Defendants, WSIA, and Sovereign*

79.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

80.     As of May 1, 2008, the total amount of $4,355,207.00 was due and owed Henderson, constituting principal in amount of $3.358 Million plus interest from May 1, 2005 at a variable rate equal to the Wall Street Journal Prime Rate plus one (1%) percent.

81.     After May 1, 2008, interest on the principal amount accrues at the rate equal to the Wall Street Journal Prime Rate plus six (6%) percent.

82.     The Moravian Defendants have breached the Settlement Agreement by failing to pay the indebtedness owed Henderson on or before May 1, 2008, as required by the Settlement Agreement.

83.     The Moravian Defendants have breached the Settlement Agreement by failing to release the sale proceeds to Henderson, as required by the Settlement Agreement.

84.     The Moravian Defendants have breached the Settlement Agreement by allowing the Citizens Mortgage to remain a lien on the Property even though the Citizens Loan was paid off.

WHEREFORE, The Henderson Corporation respectfully requests that this Honorable Court order the release to it of the sale proceed funds held in escrow, strike or subordinate the Citizens Mortgage, and order Defendants to release all proceed from future sales of Condominium Units to Henderson, together with costs of suit and all other remedies this Court deems appropriate.

17

## COUNT II
## QUIET TITLE
### *Henderson v. WSIA and Renaissance*

85.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

86.     Pursuant to the terms of the Settlement Agreement, the Moravian Defendants granted the Henderson Mortgage, junior only to the Citizens Mortgage.

87.     The Moravian Defendants agreed that Citizens Bank would retain a first priority lien on the Condominium Units until the amounts due and owed Citizens Bank were paid off in full. Thereafter, the Henderson Mortgage would obtain a first priority status on any remaining Condominium Units and Henderson would receive all net sale proceeds (after the reimbursement to WSIA of fit-out costs up to $800,000.00).

88.     As a result of the Settlement Agreement, and the promise of first priority status for the Henderson Mortgage and the distribution to it of net sale proceeds, Henderson dismissed the First Federal Action with prejudice.

89.     Although Citizens received the amount it demanded as a payoff on April 30, 2007, the Citizens Mortgage was not satisfied but was assigned to WSIA.

90.     The Moravian Defendants and WSIA have refused to mark the Citizens Mortgage satisfied or to distribute the proceeds of Condominium Unit sales as required by the Settlement Agreement. They are demanding in excess of $1.5 Million to satisfy the Citizens Mortgage.

91.     In addition, the Settlement Agreement precludes the existence of any liens on the Property senior to the Henderson Mortgage, except for the Citizens Mortgage, or the placement of additional liens on the Property. The only permitted creditors senior to Henderson were Citizens Bank (up to $3,996,000.00, the principal of the Citizens Loan at the time of the Settlement

18

Agreement) and WSIA (up to $800,000.00, the amount of the revolver permitted by the Settlement Agreement).

92.     After paying off the Citizens Loan, the Developer Defendants and WSIA have sought to increase the lien of the Citizens Mortgage to cover additional funds advanced by WSIA or Kean in excess of $1.5 Million.

93.     Additionally, Renaissance is demanding payment in excess of $1.6 Million to satisfy the Renaissance Notes and to release the Renaissance Condominium Units Mortgage and Renaissance Restaurant and Apartment Mortgages (collectively, the "Renaissance Mortgages") and contends that these mortgages are senior to the Henderson Mortgage and Henderson Confessed Judgment, at least with respect to the Apartments and Restaurant Unit.

94.     Henderson believes and therefore avers that Renaissance will not release its Renaissance Condominium Units Mortgage and allow any proceeds from the future sale of the two Condominium Units and eight Apartments to be distributed to Henderson, despite Renaissance's subordination of the Renaissance Condominium Units Mortgage to the Henderson Mortgage.

95.     For the reasons detailed below, the Renaissance Notes and Renaissance Mortgages are null and void and the Renaissance Mortgages must be stricken.

96.     Henderson seeks for the Court to quiet title pursuant to Pa.R.C.P. 1061(b)(2) by determining that the payoff of the Citizens Mortgage resulted in the Citizens Mortgage being satisfied, thus giving the Henderson Mortgage first priority.

97.     Henderson also seeks for the Court to quiet title pursuant to Pa.R.C.P. 1061(b)(2) by striking the Renaissance Mortgages.

WHEREFORE, Plaintiff The Henderson Corporation respectfully requests that this Honorable Court quiet title against Defendants Walnut Street Investment Associates, LLC, and

19

Renaissance Development Real Estate Services, LLC, thereby invalidating and/or extinguishing any and all rights, claims and interests asserted by WSIA and/or Renaissance, as well as any such other relief as this Court deems appropriate.

## COUNT III
## FRAUDULENT TRANSFER
### *Henderson v. Renaissance and Principal Defendants*

98.     Plaintiff incorporates the above paragraphs as though fully set forth herein.

99.     Renaissance is demanding payment in excess of $1.6 Million to satisfy the Renaissance Notes and to release the Renaissance Mortgages.  With respect to at least the Apartments and Restaurant Unit, Renaissance contends that its mortgages are senior to the Henderson Mortgage and Henderson Confessed Judgment.

100.    The Renaissance Notes and Renaissance Mortgages were executed by the Moravian Defendants with the intent to hinder, delay, and defraud creditors, including future creditors such as Henderson. The Moravian Defendants did not receive reasonably equivalent value for executing the Renaissance Notes and Renaissance Mortgages.

101.    The Renaissance Mortgages do not secure funds actually lent or advanced to the Moravian Defendants by Renaissance, but rather anticipated profit, or a return on investment, or a return of capital to Renaissance and the Principals.

102.    The Renaissance Notes and Renaissance Mortgages improperly improved the position of the Principal Defendants *vis a vis* creditors of the Moravian Defendants.

103.    Henderson seeks the Court's determination that the Renaissance Notes and Renaissance Mortgages are null and void, not supported by consideration, and act as a fraud on creditors, and that the Renaissance Mortgages be stricken or subordinated to Henderson's liens.

**WHEREFORE**, Plaintiff The Henderson Corporation respectfully requests that this Court strike the mortgages on the Property granted to Renaissance Development Real Estate Services, LLC.

**COUNT IV**
**FRAUD**
***Henderson v. Developer Defendants***

104.    Plaintiff incorporates the above paragraphs as though fully set forth herein.

105.    Beginning with the execution of the Construction Agreements, the Developer Defendants deliberately embarked on a course of conduct intended to hinder, delay, avoid payments to, and defraud Henderson of amounts due and owed under the Construction Agreements and, later, the Settlement Agreement.

106.    These fraudulent acts included fraudulent misrepresentations as to financial viability and ability to pay, fraudulent inducements to continue work on the Project, and numerous examples of frivolous litigation including the Second Federal Action, the petition to open or strike the Henderson Confessed Judgment, and the appeal to the Superior Court.

107.    The Developer Defendants are seeking to defraud Henderson by using the Citizens Loan Documents, particularly the Citizens Mortgage, to increase the debt ahead of Henderson and to deprive Henderson of the proceeds from the sale of Condominium Units.

WHEREFORE, Plaintiff The Henderson Corporation respectfully requests that this Honorable Court enter judgment in its favor, and against the Developer Defendants, jointly and severally, in an amount in excess of $3.358 Million, together with interest, costs of suit and all other remedies this Court deems appropriate.

## COUNT V
## UNJUST ENRICHMENT
### *Henderson v. Principal Defendants and WSIA*

108.    Plaintiff incorporates the above paragraphs as though fully set forth herein.

109.    The Moravian Defendants have failed to pay Henderson for work completed on the Project totaling $4,355,207.00 as of May 1, 2008.

110.    The Developer Defendants, including the Principal Defendants, have received the benefit of Henderson's work for which Henderson has not been paid.

111    The Principal Defendants, particularly Kean, acting through Defendant WSIA, are now attempting to protect, realize or recover their capital contributions, losses incurred as guarantors, and anticipated profits, all at the expense of Henderson.

112.    By seeking to increase the amount secured by the Citizens Mortgage and allegedly owed WSIA, the Principal Defendants are attempting to deprive Henderson of Unit Condominium sale proceeds, which only exist because of Henderson's uncompensated work.

113.    It would be unjust and inequitable, and would unjustly enrich the Principal Defendants, particularly Kean, to allow them to recover capital contributions, losses incurred as guarantors, and anticipated profits prior to paying Henderson.

WHEREFORE, The Henderson Corporation respectfully requests that this Honorable Court enter judgment in its favor, and against Principal Defendants and WSIA, in an amount in excess of $3.358 Million, together with interest, costs of suit and all other remedies this Court deems appropriate.

## COUNT VI
## TORTIOUS INTERFERENCE
### *Henderson v. Kean and WSIA*

114.    Plaintiff incorporates the above paragraphs as though fully set forth herein.

22

115.    The Settlement Agreement provides that Henderson would receive a mortgage on the Property, subordinate only to that held by Citizens Bank, and would be paid from the distribution of proceeds as the Condominium Units were sold.  Henderson's debt would be paid after the balance held by Citizens Bank was repaid and after WSIA was reimbursed, up to a maximum of $800,000.

116.    WSIA and Kean have purposely interfered with Henderson's contractual relationship with Moravian Defendants by paying off the debt to Citizens Bank and taking an assignment of Citizens Note and Mortgage in an effort to redirect funds slated for Henderson under the Settlement Agreement.

117.    There is no applicable privilege or justification for the actions of WSIA or Kean.

118.    WSIA and Kean's tortious interference in Henderson's contractual relationship with Moravian Defendants has caused substantial damage to Henderson, including but not limited to, the loss of funds intended to repay Henderson for work performed on the Project.

WHEREFORE, The Henderson Corporation respectfully requests that this Honorable Court enter judgment in its favor, and against Defendants Kean and WSIA, in an amount in excess of $3.358 Million, together with interest, costs of suit and all other remedies this Court deems appropriate.

## COUNT VII
## CIVIL CONSPIRACY
### *Henderson v. Developer Defendants and WSIA*

119.    Plaintiff incorporates the above paragraphs as though fully set forth herein.

120.    The Principal Defendants, Moravian Defendants and WSIA conspired to defraud Henderson by, *inter alia*, attempting, in violation of the Settlement Agreement, to allow Kean and WSIA to increase the debt secured by the Citizens Mortgage and to place that additional debt in a position senior to that of Henderson.

23

121.    In furtherance of this conspiracy, Kean and WSIA obtained additional financing from Sovereign Bank and paid off the debt to Citizens Bank in exchange for an assignment of the Citizens Loan Documents including the Citizens Mortgage.

122.    The purpose of this conspiracy was to improperly recover funds advanced by the principals of the Moravian Defendants or guarantors of the Citizens Loan.

123.    The Principal Defendants and WSIA, through these efforts, sought to obtain monies from sales of Condominium Units which were earmarked for Henderson pursuant to the terms of the Settlement Agreement.

WHEREFORE, Plaintiff The Henderson Corporation respectfully request that this Honorable Court enter judgment in its favor and against the Principal Defendants, Moravian Defendants and WSIA for compensatory and punitive damages, in excess of $3.358 million, including pre-judgment and post-judgment interest, reasonable attorneys fees, together with costs of suit and such other relief as this Court deems just, proper and equitable.

## COUNT VIII
## DECLARATORY JUDGMENT
### *Henderson v. All Defendants*

124.    Plaintiff incorporates the above paragraphs as though fully set forth herein.

125.    For the reasons stated above, Henderson seeks a declaratory judgment pursuant to Fed.R.Civ.P. 57 that:

a.      The Settlement Agreement precludes the existence of any liens on the Property senior to the Henderson Mortgage, except for the Citizens Mortgage, or the placement of additional liens on the Property;

b.      With respect to the Condominium Units, the only permitted creditors senior to Henderson were Citizens Bank (up to $3,996,000.00, the remaining balance of the Citizens Loan at

24

the time of the Settlement Agreement) and WSIA (up to $800,000.00, the amount of the revolver permitted by the Settlement Agreement);

          c.     Citizens Bank has been paid in full and the Citizens Mortgage has been satisfied;

          d.     Henderson is entitled to all sales proceeds being held in escrow;

          e.     Henderson is entitled to all proceeds from the sale of Condominium Units; and

          f.     The Renaissance Notes and Renaissance Mortgages are null and void.

WHEREFORE, Plaintiff The Henderson Corporation respectfully requests declaratory judgment as stated above.

          **COHEN, SEGLIAS, PALLAS,**
          **GREENHALL & FURMAN, P.C.**


          **By:**_____/s/_____
          **GEORGE E. PALLAS**
          **MARIAN A. KORNILOWICZ**
          ID # 54408/43776
          30 South 17th Street, 19th Floor
          Philadelphia, PA 19103
          (215) 564-1700
          Attorneys for Plaintiff,
          The Henderson Corporation

Dated:  August 29, 2008